IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CHATTANOOGA PROFESSIONAL SOCCER MANAGEMENT, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:19-cv-00339 ) ) |
| ARKANSAS STATE UNIVERSITY, | ) ) |
| Defendant. | ) ) ) |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Arkansas State University ("ASU"), pursuant to its special appearance entered in this action, submits this Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss the Complaint ("Response" or "Resp."). The Court should grant the Motion to Dismiss ("Motion," Dkt. No. 19) because ASU is immune from suit in this Court for these claims under the Eleventh Amendment of the U.S. Constitution. This Court also lacks jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because no justiciable controversy exists. Plaintiff Chattanooga Professional Soccer Management, LLC's ("CPSM") Complaint for Declaratory Judgment ("Complaint," Dkt. No. 1) should be dismissed for a lack of subject matter jurisdiction. CPSM's Response to ASU's Motion ignores many of ASU's arguments, misstates or mischaracterizes much of the precedent on which it relies, and provides nearly no analysis linking most of its legal citations to the facts of this action. For all the foregoing reasons and those submitted in the Motion, the Complaint should be dismissed.

1

## I.     ASU is Sovereignly Immune From This Suit.[1]

ASU is an arm of the state of Arkansas, which has been established by multiple court decisions. Although CPSM alleges that ASU has not met its burden of establishing this, it supplies no facts or information that puts those well-reasoned decisions into question. Principles of comity support this Court adhering to those decisions and there is no reasonable basis to depart from them and CPSM provides no contrary precedent that would warrant that departure.

Moreover, Congress has not abrogated immunity for trademark disputes and any attempt it has made was declared improper by the Supreme Court. CPSM attempts to contort the holding that Congress was without authority to attempt any such abrogation, which has been applied by many other courts in other jurisdictions in the same manner proffered by ASU. Additionally, ASU has not waived any immunity in this suit by participating in the Opposition proceeding. CPSM's assertions are inapposite and ignore that waiver must be unequivocally expressed—something that has not occurred here. For all these reasons, this Court should deny jurisdiction over ASU in this suit because it is sovereignly immune under the Eleventh Amendment.

### A.     Sovereign immunity applies to ASU because it is an arm of the state.

The Eighth Circuit has repeatedly held that ASU is an arm of the state entitled to sovereign immunity protection. *Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1438, 1440 (8th Cir. 1996) (noting both that "State universities and colleges almost always enjoy Eleventh Amendment immunity" and that ASU is entitled to that immunity); *Hein v. Arkansas State Univ.*, 972 F. Supp. 1175, 1178 (E.D. Ark. 1997) (nothing that "[a]s an agency of the State of Arkansas, Arkansas State University, along with its Board of Trustees and the individual University officials named in this suit, are immune from damages claims under the Eleventh Amendment to the United States

---

[1] For abbreviations and references to the parties correspondence, ASU relies on the same conventions used in the Motion (at 1-5).

Constitution, and Art. 5 § 20 of the Arkansas Constitution."); *Sutton v. Arkansas State Univ.*, No. 3:11CV00123 JLH, 2011 WL 3861391, at *2-3 (E.D. Ark. Sept. 1, 2011) ("The Eleventh Amendment bars suit against a state and its agencies—including Arkansas State University—for any kind of relief, not merely monetary damages."); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) ("[ASU] argues the Eleventh Amendment bars suit against the University for any kind of relief, not merely monetary damages. We agree."); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995) (holding ASU and its trustees acting in official capacity immune under Eleventh Amendment).

In *Hadley*, the court further drove this point home when the Eighth Circuit compared Arkansas community colleges to ASU and ultimately held that even those community colleges—having much more autonomy than ASU—were entitled to Eleventh Amendment immunity. 76 F.3d 1437. If community colleges subject to less state control than ASU are found to be arms of the state of Arkansas, there can be little doubt that state-run ASU is an arm of the state. Notably, in *Dover Elevator*, the court addressed the level of autonomy under which ASU operates when it determined that it is entitled to that immunity:

> The district court cited the deposition of the executive assistant to ASU's president, Scott Lewis, in making its Greenwood determination. Lewis testified that the Arkansas legislature restricted funds not only coming directly from the state treasury, but also funds received by ASU from individual donors. He testified that ASU "<u>cannot spend one penny without an appropriation to do so from the general assembly</u>." This testimony was, on the record before us, never contradicted by Dover, and <u>because any award against ASU must be appropriated by the state assembly from money under state control, we find that the district court did not err in finding that ASU shares in the state's Eleventh Amendment immunity</u>.

*Id*. at 447 (emphasis added) (internal citations omitted). This repeated finding of law should summarily settle this matter, particularly given that the Eleventh Amendment is principled on comity, protecting the states from suits without their consent. *City of Oakland ex rel. Bd. of Port*

3

*Comm'rs v. Fed. Mar. Comm'n*, 724 F.3d 224, 227 (D.C. Cir. 2013) ("The sovereign immunity provided by the Amendment draws on principles of federalism and comity…").

CPSM cites no authority that contradicts the findings of the decisions where courts have granted ASU sovereign immunity as an arm of the state. CPSM merely references several non-precedential decisions that do not provide any contrary reason to find that ASU is sovereignly immune in this matter. For example, CPSM cites *Sherman v. Curators of University of Missouri*, 16 F.3d 860, 863 (8th Cir. 1994) for the proposition that "[a]ny state university claiming Eleventh Amendment immunity must be considered on the basis of its own particular circumstances." (Dkt. No. 24 at 6). CPSM ignores that the Eighth Circuit remanded that case to the district court for further factual finding because there were unrebutted factual allegations that "only one-third of the University's operating budget comes from state appropriations." *Id*. at 864. Then, on remand and after further considering the funding, the district court dismissed the suit because the University of Missouri is entitled to Eleventh Amendment immunity just as ASU is here. *Sherman v. Curators of Univ. of Missouri*, 871 F. Supp. 344, 348 (W.D. Mo. 1994).

No fact-finding is necessary or implicated here for several reasons, though. First, multiple courts have already concluded that ASU is an arm of the state and entitled to Eleventh Amendment immunity. Full faith and credit should be afforded to those decisions. Second, CPSM itself admits that ASU is a "state agency." (Dkt. No. 1, ¶ 2). Third, there are no allegations or facts of record that call into question the propriety of the previously issued decisions. Although CPSM does not address the *Smyrna* factors (Resp. at 5), all of these factors are satisfied as well, further demonstrating the propriety of the earlier decisions finding ASU to be an arm of the state subject to Eleventh Amendment immunity.

4

### B. The *Smyrna* factors are satisfied.

#### 1. *The State's potential liability.*

The State of Arkansas is liable as the entity funding ASU and will be liable for any damages or adverse outcome from this suit. *Dover Elevator Co.*, 64 F.3d at 446-47.

#### 2. *The State's reference to the entity and the degree of control over the entity.*

As concluded by the court in *Dover Elevator Co.*, 64 F.3d at 446-47, ASU has nearly no autonomy outside the State of Arkansas.

#### 3. *Whether state or local officials appoint the board members of the entity.*

ASU's five-member Board of Trustees are appointed by the governor. (ASU Website, available at http://www.asusystem.edu/about/ (last accessed March 11, 2020)).

#### 4. *Whether the entity's functions fall within the traditional purview of state or local government.*

There can be no dispute this factor favors granting ASU immunity, given the long line of cases that have done so and its status as a state university. *See supra* at 2-3.

### C. Precedent is clear that Congress did not abrogate sovereign immunity.

CPSM bizarrely interprets case holdings to assert that Congress has abrogated State sovereign immunity through The Trademark Remedy and Clarification Act ("TRCA," codified as 15 U.S.C. § 1122). (Dkt. No. 24 at 7-10). Its position strains credulity when the Supreme Court expressly stated that:

> Concluding, for the foregoing reasons, that the sovereign immunity of the State of Florida was neither validly abrogated by the Trademark Remedy Clarification Act, nor voluntarily waived by the State's activities in interstate commerce, we hold that the federal courts are without jurisdiction to entertain this suit against an arm of the State of Florida.

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691, (1999).

Although the Sixth Circuit has not had addressed this issue, other jurisdictions have applied it

5

exactly as proffered by ASU, explaining that the Supreme Court invalidated the attempted legislative abrogation under the TRCA:

> The Supreme Court has addressed Eleventh Amendment immunity as it pertains to violation of federal patent and trademark laws. In *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) and *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) the Court invalidated the legislative abrogation of state immunity from suit under these laws. In *Florida Prepaid* the Court ruled that the Eleventh Amendment was violated by the Patent and Plant Variety Protection Remedy Clarification Act of 1992, Pub.L. 102–560, 106 Stat. 4230 (codified at 35 U.S.C. §§ 271(h), 296). <u>In *College Savings* the Court reached the same result with respect to abrogation of immunity by the Trademark Remedy Clarification Act of 1992, Pub.L. 102–542, 106 Stat. 3567 (codified at 15 U.S.C. §§ 1051, 1114, 1122)</u>.

*Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1328 (Fed. Cir. 2004) (emphasis added); *Kentucky Mist Moonshine, Inc. v. Univ. of Kentucky*, 192 F. Supp. 3d 772, 780 (E.D. Ky. 2016); *Mktg. Info. Masters, Inc. v. Bd. of Trustees of California State Univ. Sys.*, 552 F. Supp. 2d 1088, 1093 (S.D. Cal. 2008); *Hairston v. N. Carolina Agr. & Tech. State Univ.*, No. 1:04 CV 1203, 2005 WL 2136923, at *4 (M.D.N.C. Aug. 5, 2005). CPSM has not cited a single decision that comports with its argument. No legitimate consideration should be given to CPSM's position that contradicts the uniform holdings of many courts, including the Court of Appeals for the Federal Circuit and the Supreme Court.

Therefore, it is immaterial whether Congress allegedly indicated intent to abrogate State sovereign immunity in the TRCA or that the legislative history allegedly favors CPSM because—as the Supreme Court held and as other courts have confirmed—Congress never had the authority to do so. Additionally, CPSM does not address the argument that framing trademark claims as ones for judgment under the Declaratory Judgment Act cannot overcome the missing Congressional abrogation for trademark claims. (Motion at 10-11). Based on the clear holdings of

6

many courts, including the Supreme Court, there can be no legitimate argument that any Congressional abrogation applies here.

### D. ASU has not waived immunity in this Court.

CPSM ignores that waiver needs to "unequivocally expressed" to subject the State to this Court's jurisdiction over its Eleventh Amendment immunity. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99 (1984); (Motion at 11). To support its flawed basis for waiver, CPSM asserts that participation in Opposition proceedings in front of the United States Patent and Trademark Office ("USPTO," an Article I agency) constitutes waiver in this Court. (Resp. at 10). It provides no precedent or rationale to support this.

CPSM, however, cites to *Regents of the University of Minnesota v. LSI Corporation*, 926 F.3d 1327, 1341 (Fed. Cir. 2019), which held that State sovereign immunity did not apply to *inter partes* review of an issued patent in proceedings before the USPTO. That patent law issue has no bearing on this case and CPSM provides no rationale to show how appearance before the USPTO could confer waiver here, nor can it. ASU does not challenge the USPTO's jurisdiction over the Opposition proceeding. ASU intends to participate there, has opposed CPSM's attempt to suspend those proceedings, and has repeatedly asserted that is the sole forum for any dispute that may exist here. (*See, e.g.*, Motion at 21, 24).

By attempting to rely on activities that have occurred in front of the USPTO as its basis for waiver in this Court, CPSM further establishes that this dispute has always focused on the registration on CPSM's marks, rather than a cognizable dispute subject to declaratory judgment jurisdiction. (*See* Motion at 16-19). CPSM further submits that "ASU has pursued aggressive action against CPSM in the nature of pursuing litigation," but offers this conclusion without any support. (Resp. at 10). In fact, ASU has not pursued any litigation against CPSM.

**II.     No Justiciable Controversy Exists to Confer Jurisdiction.**

CPSM's arguments for declaratory judgment jurisdiction are unpersuasive. It ignores many of the cases ASU cites to support dismissal, and its reliance on *McKee Foods* is unconvincing. The *Grand Trunk* factors also favor dismissal. For these reasons, this case should be dismissed for a lack of jurisdiction.

**A.     CPSM ignores precedent contrary to its arguments.**

As an initial consideration, CPSM does not address multiple cases supporting dismissal of this action. (*See* Motion at 13-17 (citing, e.g., *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 395 (S.D.N.Y.2011), *Acme Feed Mills, Inc. v. Quaker Oats Co.*, 313 F. Supp. 1156, 1158 (M.D.N.C. 1970), *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008), *Hogs & Heroes Found. Inc. v. Heroes, Inc.*, 202 F. Supp. 3d 490, 495 (D. Md. 2016)). The sound analysis in those decisions and the comparison to the facts of this case stand unrebutted.

**B.     *McKee Foods* does not support the establishment of declaratory judgment jurisdiction.**

Rather than address ASU's arguments about the cases referenced above, the bulk of CPSM's basis for declaratory judgment jurisdiction comes from emphasized quotes from *McKee Foods Kingman v. Kellogg Co.*, 474 F.Supp. 2d 934 (E.D.Tenn. 2006), but that case does not compel the result that CPSM seeks. There, the court found a justiciable controversy existed based on several aspects that are distinct from the situation here.

> *1.     In Mckee Foods, the Defendant demanded accounting of profits, where here ASU has not made such litigation-like demands.*

There, only one letter was sent to plaintiff, whereas ASU and CPSM exchanged multiple letters back and forth, showing an ongoing effort to resolve the issues. Had ASU considered it necessary to file an infringement suit against CPSM, it would have done so, rather than exchanging

8

multiple letters attempting to avoid it. In its Response, CPSM repeatedly lumps all the communications together as if they were one, which misrepresents the facts and the arc of the correspondence. (*See* Resp. at 14-15). Nevertheless, ASU never demanded that CPSM account for profits or take any other specific action in preparation of litigation, like retaining documents.

> 2. *In McKee Foods, the letter addressed several federal causes of action including trademark and trade dress infringement, along with false advertising.*

Here, none of the communications other than the very first letter (the ASU December 14, 2018 Letter) mentioned litigation and that correspondence concerned the state of only one of the CPSM Marks as it existed prior to any of CPSM's amendments to the pending registrations at the USPTO. Also, CPSM's timely response to that letter removed the likelihood of litigation. (Motion at 18-19) and litigation was not mentioned at any time thereafter.

> 3. *The letter in McKee contained no discussion of Opposition.*

Unlike the situation here, the *McKee* letter discussed only causes of action that occur in federal courts. *Id*. at 936-37. The correspondence between CPSM and ASU, however, always focused on the registration of the CPSM Marks and the potential for an Opposition at the USPTO. (*See* Motion at 14-19).

> 4. *The reference to settlement in the McKee letter was only generically referenced and followed defendant's demands for accounting and accusations of several federal causes of actions.*

Unlike *McKee*, the ASU November 18, 2019 Letter (the most recent letter) made no demands for accounting or referenced any specific causes of action aside from the Opposition proceeding that is ongoing before the USPTO. There was no threat of litigation, as asserted by CPSM. (Resp. at 13). The ASU November 18, 2019 Letter mentioned that ASU would consider the options available to it and reserved its rights, but if it really anticipated that litigation was likely or necessary, it would have said so, just as it mentioned that it intended to pursue the Opposition

9

(e.g., the ASU December 14, 2018 Letter). ASU had no reason to veil any threats because the tenor of the conversation had abated the possibility of litigation. The possibility of litigation arose very early in the parties' relationship (the very first letter) but it became clear the parties were only concerned about the Opposition proceeding and the registration of the CPSM Marks as the discussion progressed. Nevertheless, a party does not have to indicate it will never file suit to avoid declaratory judgment jurisdiction and the generic reservation of rights here should not be determined to be a threat of litigation when considered in the context of all the correspondence. *See Hogs & Heroes*, 202 F. Supp. 3d at 496 (holding that defendant's unwillingness to agree that it would never file suit, among other factors, was insufficient to establish controversy). Indeed, the November 18, 2019 Letter's reservation of rights was predicated on the protection of its marks from any challenges that CPSM may initiate against them, such as if CPSM filed its own opposition at the USPTO. It was not otherwise intended nor is it properly read as a threat of litigation.

      **C.**      **CPSM's other assertions are unpersuasive.**

CPSM does not challenge the Court's ability to consider the CPSM September 27, 209 Letter but it questions ASU's reliance on it. (Resp. at 3). ASU pointed to CPSM's language in that letter to show the tenor of the full correspondence between the parties. It shows that the parties focused on the prospect of a trademark opposition and devising an agreement for the use of the ASU Marks all the way up until the filing of the Complaint. While CPSM attempts to cast doubt on the relevance of that letter (Resp. at 3), CPSM ignores that this letter further shows the focus of the ongoing correspondence between the parties. Also, that letter shows that CPSM strategically filed this action in an effort to interfere with the opposition proceeding, which it has since sought to suspend pending the outcome here. (Resp. at 17).

10

ASU did not ignore the language of the ASU November 18, 2019 letter which stated that its preferred course of action was to receive a reasonable royalty in exchange for CPSM's use of the mark, and "[o]therwise, my client plans to proceed with the Opposition action and or any other actions it deems necessary to protect its valuable Marks. All rights are expressly reserved." (*See* Dkt. No. 1-5 at 5). This generic statement reserving rights is not a threat of litigation here when viewed in the context of all the correspondence because it is properly read as saying that ASU would defend itself against any challenges to the ASU Marks, if such a proceeding was initiated by CPSM. That interpretation is reasonable given the November 18, 2019 Letter's focus on the Opposition proceeding, supported almost entirely by USPTO case law or appeals from the USPTO, rather than district court infringement proceedings. (*See* Dkt. No. 1-5).

CPSM's other characterizations of cases concerning declaratory judgment jurisdiction are misleading. CPSM intentionally truncates its quotation of *Sun Style Int'l, LLC v. Sunless, Inc.*, No. 1:12-CV-00179, 2013 WL 3967923, at *5 (W.D. Ky. Aug. 1, 2013) to omit a key phrase on which the court relied to grant jurisdiction. Granting jurisdiction was based not only on defendant saying plaintiff should "proceed carefully with any product launch," but also saying "<u>Sunless may pursue a variety of remedies for patent infringement…if it were to determine that your equipment is covered by the '288 Patent</u>." (ellipses in original; emphasis added). When considering the full quote—not the truncated version submitted by CPSM—that case further supports ASU's position because that defendant explicitly referenced patent infringement (a federal cause of action adjudicated in district court) in its letter, which is not the case for the correspondences here except for the very first letter, where the possibility of litigation was removed by CPSM's timely reply.

CPSM's comparison of this matter to *Crowned Heads, LLC v. Nat'l Grange of Order of Patrons of Husbandry*, No. 3:12-CV-1062, 2013 WL 1347874, at *1 (M.D. Tenn. Apr. 3, 2013)

11

also falls short. That comparison ignores the reasons why the court granted jurisdiction there, which was the express statement that defendant explained it would pursue both an opposition proceeding and a district court action by stating that it "would not only oppose any application for registration, but that it would also object to any commercial *use*" of the mark. *Id*. at *5 (emphasis in original) (*see* Motion at 17-18).

### D. The *Grand Trunk* factors justify dismissal.

As argued in ASU's Motion, CPSM tactically filed this suit—not because it believed that litigation was imminent—but because it wanted to pursue an action in its preferred forum to attempt to preclude ASU from seeking its Opposition at the USPTO. CPSM filed its Motion to Suspend the Opposition in the USPTO just hours after ASU filed its Motion, thereby further demonstrating this motive. CPSM cannot assert that this matter will settle the controversy because it has always concerned the registration of the CPSM Marks, which will be decided at the USPTO. CPSM does not ask this Court to cancel the ASU Marks and only seeks an advisory opinion that it may use its marks without infringing. However, that does not settle the actual dispute as to whether it is proper for the USPTO to register the CPSM Marks. For all these reasons, and as established by considering the *Grand Trunk* factors, the USPTO is the proper forum for any potential dispute between the parties. *Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

> *1. The declaratory judgment action will not settle any dispute existing between the parties.*

The declaratory judgment action will not settle this dispute because, to the extent any disagreement exists, it concerns the registration of the CPSM Marks. The USPTO is the proper forum for determining registration. (*See* Motion at 21).

12

### 2. *This declaratory judgment action will not serve a useful purpose in clarifying the legal relations at issue.*

CPSM neither analyzes how this factor supports jurisdiction here nor addresses ASU's arguments. (Resp. at 18-19; Motion at 21). It merely concludes that the "entry of a declaratory judgment by this Court will not only clarify the legal relationships between the named parties as presented to this Court but will finally resolve those legal relationships." (Resp. at 19). This statement is not only unsupported but also incorrect because this action will not resolve whether or not the CPSM Marks should be registered at the USPTO.

### 3. *CPSM filed this suit to attempt to procedurally fence-off ASU from pursuing the Opposition at the USTPO.*

CPSM asserts that it "is not before this Court to avoid another forum or to win the race with ASU to another forum." (Resp. at 19). This is belied by CPSM's conduct in this matter, particularly given that it represented to the USPTO that the Opposition should be suspended in view of this proceeding and filed that Motion to Suspend just hours after ASU filed its Motion to Dismiss here. (Resp. at 18). CPSM does not address the timing of the filing of this action shortly before ASU was to file its Opposition and ignores the timing the filing of its Motion to Suspend. Its Response (at 17-18) further demonstrates this motivation because it assumes that it is the "standard practice" of the Trademark Trial and Appeal Board to suspend proceedings after the filing of a district court litigation. CPSM thus filed this action in an attempt to invoke that standard practice, knowing that ASU had a pending deadline to file its Opposition. The premature filing of this action seeking an advisory opinion is a clear attempt at forum shopping.

### 4. *This action would increase friction amongst the courts.*

CPSM ignores the friction that would result from this Court granting jurisdiction by brushing-off this factor and stating that "this factor [is] of no or negligible impact" because "there is no state court proceeding or involvement." (Resp. at 19). This ignores the Eleventh Amendment

13

issues presented by ASU and the breadth of the relief CPSM seeks, namely, an advisory opinion that its use of its marks does not "constitute unfair competition or trademark infringement <u>under the statutes or common law of any state</u> in the United States." (Compl. ¶ 22 (emphasis added)). This factor weighs heavily in favor of ASU because granting jurisdiction would violate ASU's Eleventh Amendment protection and it asks this Court to issue an advisory opinion based on the laws of all states in the United States, which is entirely improper.

> 5. *A remedy at the USPTO would be more appropriate.*

CPSM argues that this Court is the proper forum because the USPTO's decision in the Opposition is appealable to the United States Court of Appeals for the Federal Circuit or to a United States District Court. (Resp. at 20). It would be error for this Court to grant jurisdiction on a hypothetical set of circumstances. Indeed, CPSM makes it clear that it cannot justify jurisdiction here, knowing that the dispute concerns the registration of the CPSM Marks, which is properly adjudicated at the USPTO in the Opposition proceeding.

## III. Count II Lacks Standing.

CPSM simply concludes, without any analysis, that "Plaintiff's allegations are not broader than any controversy appearing in the correspondence between the parties." (Resp. at 20). It entirely ignores the explanation provided in the Motion that explained that none of the correspondences had any mention or implication of "reproductions, copies, counterfeits, or colorable imitations of any of Defendant's marks under the Lanham Act." (Motion at 19-20). CPSM does not even reference the parties' discussions here, knowing that Count II is fully unsupported, overly broad, and should be dismissed.

14

Case 1:19-cv-00339-DCLC-CHS   Document 29   Filed 03/16/20   Page 14 of 16   PageID #: 434

## CONCLUSION

For all the foregoing reasons and those in ASU's Motion to Dismiss, ASU respectfully requests that the Court enter an order dismissing Plaintiff's complaint in its entirety with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

Dated: March 16, 2020

Respectfully submitted,

/s/ Paige W. Mills

Paige W. Mills (#016218)
**Bass, Berry & Sims, PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel: 615-742-7770
Fax: 615-742-0429
Email: pmills@bassberry.com

Matthew D. Zapadka
 (admitted *pro hac vice*)
**Bass, Berry & Sims, PLC**
1201 Pennsylvania Avenue NW, Suite 300
Washington, DC 20004
Tel: 202-827-7974
Fax: 202-380-0586
Email: matt.zapadka@bassberry.com

*Counsel for Arkansas State University*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing has been served upon the following via the Court's CM/ECF e-mail notification system, on this 16th day of March, 2020.

Hollie Floberg
Matthew D. Brownfield
GRANT KONVALINKA & HARRISON PC
633 Chestnut Street
Suite 900
One Republic Center
Chattanooga, TN 37450
E-mail: hfloberg@gkhpc.com
E-mail: mbrownfield@gkhpc.com

                                                  /s/ Paige W. Mills
                                                  Paige W. Mills